## George Y. Perkins et al. v. The Reservoir Park Fishing & Boating Club et al.

1. MUNICIPAL CORPORATION—*when lease by, ultra vires.* A municipal corporation has no power to lease property held by it in trust for all the citizens for a grossly inadequate sum and thereby increase the burden of taxation falling upon the citizens generally, and a court of equity will, where fraud in making such a lease is shown, grant relief at the instance of a taxpayer.

2. TAXPAYER—*when remedy conferred upon, for recovery of money due municipality, is not exclusive.* The statute which con-

Perkins v. Reservoir Pk. Fish. & Boat. Club.

fers upon a taxpayer the right to sue at law and recover for and in the name of a municipality any money due it, does not preclude such taxpayer from making application to a court of equity where he seeks, with respect to such municipality, other and further relief than the mere recovery of money or property due it.

Bill in equity. Error to the Circuit Court of Edgar county; the Hon. JAMES W. CRAIG, Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded with directions. Opinion filed November 27, 1906.

J. E. DYAS, F. T. O'HAIR and F. C. VAN SELLAR, for plaintiffs in error.

HENRY S. TANNER, SHEPARD & TROGDEN, and HAMLIN & GILLESPIE, for defendants in error.

MR. JUSTICE BAUME delivered the opinion of the court.

Plaintiffs in error, twenty residents and taxpayers of the city of Paris, filed their bill in equity against defendants in error, The Reservoir Park Fishing and Boating Club, the city of Paris, C. P. Hitch, Horace Dollarhide, O. T. Merkle, Al. Bell, F. D. Lydick, Thomas Huls, J. H. C. Gist, Mora Athon, T. C. McCord, W. B. Logan and James W. Cryder, to have a lease of certain property from the city of Paris to The Reservoir Park Fishing and Boating Club declared null and void, and for other relief. Defendants in error interposed a demurrer to the bill, which was sustained by the chancellor, and the bill dismissed for want of equity.

The bill alleges that the city of Paris is incorporated under the general incorporation act, and that the city council of said city consists of the mayor and ten aldermen; that during the years 1895 and 1896 the said city acquired title and possession by purchase of a tract of land containing 241 acres, more or less, situated about two miles north of the city limits of said city; that 100 acres of the said tract of land was purchased and procured by the said city and

130    APPELLATE COURTS OF ILLINOIS.

VOL. 130.]    Perkins v. Reservoir Pk. Fish. & Boat. Club.

thence hitherto has been used by said city for fur-
nishing the inhabitants of said city with a supply
of water, and upon which the city erected water
works, which have been in operation for furnish-
ing said city and the inhabitants thereof with a
supply of water from the time said land was pur-
chased down to the present time; that the remaining
portion of said tract of land, to wit, 141 acres, more
or less, was purchased by said city at time, or times,
aforesaid, and that the same is still owned by said
city and has, from the date of its purchase to the
present time, been used by said city and the inhabi-
tants thereof as a public park, and that the entire
tract of land aforesaid has been known and desig-
nated by said city and the inhabitants thereof as
"Reservoir Park;" that on November 22, 1897, a
private corporation known as "The Reservoir Park
Fishing and Boating Club" was organized under the
general laws of Illinois for the purpose of manag-
ing Reservoir Park for pecuniary profit; that some
time during the said year 1897 a void and illegal lease
or contract was entered into between the then mayor
and aldermen of the city of Paris and the said club for
the term of ten years, whereby the exclusive control of
said Reservoir Park, together with the right to ex-
clude the public therefrom, to exclude the boats of all
persons from the lake and all persons from fishing in
the lake, and the exclusive right to harvest the ice on
the lake, was attempted and pretended by said in-
strument to be given to said club, and said club was
also pretended to be permitted by said instrument to
erect buildings therein if it desired, and to fence said
park; that it was also pretended to be provided in said
instrument that said club was to pay annually into
the treasury of said city an amount equal to ten per
cent. of gross earnings, and that said club never com-
plied with its pretended agreement in this regard and
has never paid anything to said city; that said club is
insolvent; that its liabilities are more than $7,000

and its assets do not exceed $2,000 and that a large part of the improvements which it made in the park have been paid for by the city; that Charles P. Hitch and Horace Dollarhide are sureties or indorsers on said indebtedness, and are also stockholders and directors in said club; that said club entered into possession of said park under said pretended lease and has remained in possession thereunder until August 7, 1905, when, anticipating the termination of said pretended lease and knowing that the same was fraudulent and illegal, the directors of said club, together with T. C. McCord, who is the mayor of said city, and O. T. Merkle, Al. Bell, F. D. Lydick, Thomas Huls, J. H. C. Gist and Mora Athon, who are members of the council of said city, fraudulently and secretly colluded together to transfer the use of said land to said club for the period of twenty years for the nominal rent of $100 per annum, for the purpose of relieving said C. P. Hitch and Horace Dollarhide from liability as sureties and indorsers as aforesaid and thereby defrauding the said city of Paris and the citizens thereof of the uses, privileges and profits of said real estate as is hereinafter set forth; that George W. Myers, as president of said club, then and there signed the pretended contract at the request of said C. P. Hitch and Horace Dollarhide and for the further purpose of enabling one James W. Cryder to procure from said club the ice privilege on the lake upon the above described premises belonging to the said city of Paris which were included in the pretended lease which was expected to be procured, and was thereafter procured from T. C. McCord, O. T. Merkle, Al. Bell, F. D. Lydick, Thomas Huls, J. H. Gist and Mora Athon, mayor and aldermen of said city of Paris.

The bill further alleges that at a regular meeting of the city council held on August 7, 1905, without previous notice to the members thereof, as required by its rule, said pretended lease was presented to the

132 · APPELLATE COURTS OF ILLINOIS.

VOL. 130.]    Perkins v. Reservoir Pk. Fish. & Boat. Club.

council and the six aldermen above named voted in favor of said illegal lease or contract, being the same six men with whom said C. P. Hitch and Horace Dollarhide had previously colluded and who had fraudulently agreed to vote for the passage of said pretended lease at the instance and dictation of said C. P. Hitch; that said pretended lease was immediately after the said vote by said six aldermen, as aforesaid, signed by T. C. McCord, the mayor, and Walter B. Logan, city clerk, thereby pretending to release said club from all indebtedness under the first contract and turning over to said club, property for the nominal sum of $100 per annum, the use of which was fairly worth $2,000, and that no ordinance or resolution was passed by said council relative to said pretended lease; that the consideration to be paid for said pretended contract was grossly inadequate and a giving away of valuable property of said city; that said club, within a few days after the meeting of the council, sold the ice privilege alone to one James W. Cryder, who in consideration thereof assumed the payment of $7,000 of said indebtedness of said club, and upon which said C. P. Hitch and others were liable as aforesaid; that such subcontract was in contemplation, if not in fact, agreed to before said meeting of the council, and that the same was known to the six aldermen, or some of them, at the time they voted for the pretended lease; that said Cryder well knew that said pretended leasing of said property was only an illegal appropriation and virtual donation of the property of the city to enable said club to pay its debts and thereby to relieve said C. P. Hitch and Horace Dollarhide from their liability as sureties for the same indebtedness.

A copy of the lease mentioned in the bill is attached thereto as "Exhibit A," and is as follows:

"Memorandum of agreement made and entered into by and between the city of Paris, party of the first part, and The Reservoir Park Fishing and Boating

Club, a corporation organized under the laws of the State of Illinois, parties of the second part.

Witness: That said party of the first part has this day leased to the said second party for a term of twenty (20) years, beginning August 7, 1905, and ending August 7, 1925, all the rights and exclusive privileges of the waters and grounds situated on section 25 and 26, town 14, north range 12 west of the 2nd P. M., acquired by purchase and lease by said city, also the grounds and privileges that said city may hereafter acquire by reason of purchase or lease to or adjoining any of said grounds now owned by the said city of Paris, in connection with Reservoir Park and Lakes and City Water Works. The said privileges shall consist of the boating, fishing and ice use of both skating and taking ice for commercial purposes, also all privileges of Park or grounds known as stand privileges for which the said second parties contract as follows: To maintain a good and sufficient boat house and landing. To have and keep not less than one steam, naptha or electric launch, also a sufficient number of boats to accommodate the public. Said second parties further agree to have a keeper of boats on duty that the public may be accommodated at all times during the boating season. Said second parties agree to look after all said grounds and to keep them in reasonably good condition, and to report to proper authorities any and all misdemeanors or violation of laws or ordinances made to govern said grounds and waters and to assist in every reasonable way to keep waters from being polluted from any cause. Said second parties further agree that the fishing privileges shall be governed as to mode and time of fishing, by the Committee selected by the council, as heretofore fixed by the ordinance.

"Said second parties further agree to pay the party of the first part an annual rental of one hundred dollars ($100.00) per year during the term of said lease payable semi-annually January 1 and July 1 of each year.

"Said first party agrees to clothe with police powers as many men as said second party may require

134    APPELLATE COURTS OF ILLINOIS.

VOL. 130.]    Perkins v. Reservoir Pk. Fish. & Boat. Club.

at different times to keep order and to protect said grounds and waters. Said police force so appointed to be paid by the parties of the second part.

"The second party agrees to use diligence in advertising the said grounds and waters, as well as the city of Paris. Nothing in this agreement shall prevent the government and control of said property by the city so far as it may be necessary to police .the same, and preserve the purity of the water, and to furnish the water to the city or the inhabitants thereof and to perform all duties that devolve on the city by virtue of the laws of the State of Illinois.

"The party of the first part further reserves the right to make such improvements on said property, as it any time may see fit so to do.

"The public is to have free access to the Park, springs and grounds under such reasonable rules and regulations as may be provided by the city and club.

"Said party of the second part is to have the exclusive right to the control and possessions of all buildings and structures erected by them, and is also to have' the right to remove said buildings at the expiration of said lease and to have the exclusive right to the boating and ice privileges aforesaid, and the right to rent or lease said parks for picnics and other public gatherings, with the consent of the party of the first part.

"The party of the second part, with the consent of the party of the first part, may charge an admission fee to said premises on such date as they may have attraction provided at a cost to said second party, otherwise the premises are to be free to the public.

"Said party of the second part is not to use any of the land for cultivation or for pasturing stock. It is further agreed and understood that the said party of the second part, nor any officers or members thereof, shall have the right to in any manner make or contract any debt for or on behalf of the party of the first part nor make the party of the first part liable for any such debt.

"Said second party agrees, that at no time will they

ERRATUM (App. 130.)
PAGE 137, 13TH LINE FROM TOP
"Adequate" should be "inadequate."
*(Reprint copies now correct)*

permit the sale of intoxicating drinks or the privileges to any gambling device of any kind whatsoever on said grounds controlled by them.

''Said second party further agrees to use due precaution to protect all trees on said grounds and to superintend the transplanting of any trees if the council so desires. Said second party has the right to erect all necessary ice houses and other necessary buildings on said land and the exclusive right to use the same, but such buildings are to be located at such places as the city and the second party may agree.

''Whereas: A lease or contract between the party of the first part and the party of the second part dated December 7, 1897, and expiring December 7, 1907, is by the adoption of this lease by both parties abrogated or annulled in all its requirements.

In witness whereof the city of Paris has caused to be affixed here, the seal of said city attested by the city clerk and signed by the mayor, and the said The Reservoir Park Fishing and Boating Club has caused to be affixed hereto, its corporate seal attested by its secretary and signed by its president this 7th day of August, 1905.

Attest:        [SEAL.]                CITY OF PARIS,
                                By T. C. McCORD, Mayor.
W. B. LOGAN, City Clerk.

                                G. W. MYERS,
President of Reservoir Park Fishing and Boating Club.
    Attest:
        H. DOLLARHIDE,
Secretary Reservoir Park Fishing and Boating Club.''

While the bill in this case is inartificially drawn, and somewhat lacks perspicuity and definiteness in statement, we think it is sufficient upon general demurrer to require defendants in error to answer.

It is too well established as a general rule to require extended argument or citation of authority that courts will not interfere with or supervise the exercise by a municipality of its purely legislative or discretionary powers. City of Mt. Carmel v. Shaw, 155 Ill. 37; Roby v. City of Chicago, 215 Ill. 604.

136    Appellate Courts of Illinois.

Vol. 130.]    Perkins v. Reservoir Pk. Fish. & Boat. Club.

The tract of land described in the bill, and which was purchased and was held by the city of Paris primarily for the purpose of furnishing an adequate supply of water for the use of the inhabitants of said city, is corporate property held in trust by the corporation for the benefit of its constituents, and as is said in Sherlock v. Winnetka, 59 Ill. 389: "the corporation is bound to administer such property faithfully, honestly and justly, and if it is guilty of a breach of trust by disposing of its valuable property, without any, or a nominal, consideration, it will be regarded in the same light as if it were the representative of a private individual, or of a private corporation; that the mere fact in such a case, that the forms of legislation are used in committing such breach of trust, will make no difference in the character of the act. It will not be, in any sense, the exercise of a political power delegated for public purposes, and the privilege of exemption from judicial interference terminates where legislative action ends."

In McCord v. Pike, 121 Ill. 288, the court sustained the jurisdiction of a court of equity to enjoin the execution of a deed to property by the municipal authorities of Cook county, where it appeared that such property was about to be, collusively and fraudulently, disposed of for less than its value.

The bill in this case alleges that the rental value of the property, leased by the city of Paris for a term of twenty years to the Reservoir Park Fishing and Boating Club for $100 per annum, is $2,000 per annum; that the agreement to so lease said property was collusively and fraudulently entered into by a majority of the city council of said city and some of the officers and stockholders of said club, with the knowledge that the privilege of cutting ice on the leased premises was to be subleased by said club in consideration of the assumption by the sublessee of an indebtedness of $7,000 for the payment of which,

certain of the stockholders of said club who had been instrumental in so procuring the lease from the city, were liable as indorsers; that by the terms of the prior lease the club was bound to pay ten per cent. of the gross earnings, annually, as rent for said premises, but had failed to pay anything to the city; that a considerable sum of money was due as rent under said lease, and that by the terms of the existing lease all the provisions of the prior lease were annulled and abrogated.

It is practically admitted by defendants in error that the annual rental of $100 reserved in the lease is an adequate, and a merely nominal consideration for the premises, but it is insisted that the lease imposes upon the club many burdens that go to make the consideration to the city much more than the rental named. The burdens assumed by the club are such as are made necessary by the purposes for which the premises are to be used, for the advantage and profit of the club, and cannot be considered, in any sense, as a substantial consideration to the city for the use of the premises.

It is insisted by defendants in error that plaintiffs in error, as citizens and taxpayers, have shown no such interest as entitles them to maintain their bill; that if any financial injury has, or will, accrue to plaintiffs in error the injury is of the same kind as will be sustained by the rest of the public. Manifestly, if the city council disposes of property of considerable value for no consideration, when a substantial sum of money could be realized therefor and turned into the city treasury, becoming available for the general purposes of the city, the burdens of individual taxpayers will be increased to the extent of such deficiency. It is conceded by counsel for defendants in error that a taxpayer may maintain a suit, where the thing proposed to be done by the city council would affect him financially as a taxpayer, and we are of opinion that the facts alleged in the bill in

the case at bar, bring plaintiffs in error within the rule.

Defendants in error further contend that an adequate remedy is provided by law (chap. 24, par. 172, Hurd's Stat. 1903), whereby a taxpayer may recover, in the name and for the benefit of the city, any money or property belonging to the city, and that such remedy is exclusive and excludes the jurisdiction in this case of a court of equity. It may be conceded that if the bill here involved only sought to recover from the club the money alleged to be due the city for rent under the prior lease, the contention of defendants in error would be sound, but the bill, as we hold, presents other grounds of relief which are cognizable in a court of equity, and the rule is that where a court of equity acquires jurisdiction on any equitable ground, it will retain the cause and afford complete relief although it becomes necessary to enforce purely legal rights. County of Cook v. Davis, 143 Ill. 151; T., St. L. & N. O. R. R. Co. v. St. L. & O. R. R. Co., 208 Ill. 623.

The primary purpose of the bill is to have the existing lease declared null and void, because the same was obtained and entered into by fraud and collusion, and constitutes a breach of trust on the part of the municipal authorities and equity alone has jurisdiction to grant the relief prayed in respect to said lease.

The decree, dismissing the bill for want of equity, will be reversed and the cause remanded, with directions to the Circuit Court to overrule the demurrer and require the defendants in error to answer.

*Reversed and remanded with directions.*